IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JASON RIVERA,

    Plaintiff,

vs.

KRISTINE PRALLE, KEVIN CARR,
DAVID BURNETT, TAMMY MAASSEN,
DEBRA TIDQUIST, AND DR. MARTIN,

    Defendants.

Case No. 19 CV 506 WMC

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Jason Rivera, proceeding pro se, brings this action against Defendants Kristine Pralle, Kevin A. Carr, David Burnett, Tammy Maassen, Debra Tidquist, and Dr. Martin.

### INTRODUCTION

1. This is a civil rights action for damages due to Defendants' negligence and deliberate indifference in failing to provide adequate medical care for more that seven (7) months after a "within 24 hours" appointment with an Advanced Care Provider was recommended by a licensed physical therapist. Additionally, JCI medical staff member failed to provide Rivera with narcotic pain medication as recommended by the surgeon following the surgery.

### JURISDICTION AND VENUE

2. This action arises under 42 U.S.C. §1983. Jurisdiction is conferred by 28 U.S.C. §§ 1331, 1343(a)(3) and 1367.

3. Venue in this Court is appropriate pursuant to 28 U.S.C. §1391(b)(2) because all events giving rise to the claims presented herein occurred in the geographical boundaries of the Western District of Wisconsin.

## PARTIES

4. Plaintiff Jason Rivera is an adult state inmate and currently resides at Jackson Correctional Instution (JCI) in Black River Falls, Wisconsin.

5. Defendant Kristine Pralle, at all times relevant to this action was a resident of Wisconsin and worked at JCI as a registered nurse employed by the Wisconsin Department of Corrections. She is sued in her individual capacity.

6. Defendant Kevin A. Carr is the Secretary of the Department of Corrections. He is sued in his official and individual capacities.

7. Defendant David Burnett, at all times relevant to this action was a resident of Wisconsin and worked for the Wisconsin Department of Corrections as Director of Bureau of Health Service He is sued in his official and individual capacities.

8. Defendant Tammy Maassen, at all times relevant to this action was a resident of Wisconsin and worked at JCI as supervisor of health service unit. She is sued in her official and individual capacities.

9. Defendant Debra Tidquist, at all times relevant to this action was a resident of Wisconsin and worked at JCI as a practice nurse prescriber employed by the Wisconsin Department

2

of Corrections Bureau of Health Services. She is sued in her individual capacity.

10. Defendant Dr. Martin, at all times relevant to this action was a resident of Wisconsin and worked at JCI as a licensed medical doctor employed by the Wisconsin Department of Corrections' Bureau of Health Services. He is sued in his individual capacity.

## ALLEGATIONS OF FACT

11. On November 30, 2017, Rivera injured his left arm and shoulder by lifting weights at the prison gym so he asked an officer to contact HSU on his behalf. After completing the call to HSU, the officer informed Rivera to report to HSU.

12. When Rivera arrived at the HSU he was seen by Nurse Middleton. Rivera complained to Nurse Middleton of limited range of motion in his left shoulder accompanied with severe pain. Nurse Middleton asked Rivera what his pain was on a 0-10 scale. Rivera answered that his pain was an 8.

13. Nurse Middleton then had Darin K. a licensed physical therapist conduct an examination of Rivera's left arm. After an examination, Darin K. recommended a "within 24 hours" appointment with the Advanced Care Provider.

14. Despite having a recommendation for a "within 24 hours" medical appointment with a provider, Rivera wasn't seen on December 1, 2017.

15. On December 13, 2017, Rivera submitted a health service request to complain that his shoulder wasn't getting any better and inquired about seeing a doctor. The response the following day, by Defendant Pralle, was "appointment with Dr. Martin is soon."

3

16. Throughout 2018, Rivera continued to be in extreme pain and experienced a progression of carpal tunnel syndrome of the left hand, wrists and arm.

17. On July 17, 2018, Rivera was finally permitted to see a doctor. Dr. Martin examined Rivera, observed a depressed reflex in the biceps area of Rivera's left arm. Dr. Martin ordered an an Electromyography (EMG) for Rivera's left arm, an x-ray for his left shoulder and ibuprofen.

18. On July 25, 2018, Rivera wrote to defendant Maassen, the HSU supervisor regarding the delay in initiating treatment for carpal tunnel syndrome with a provider and the lack of pain management. Specifically, he wrote, "I've been writing and complaining about my (left shoulder) since 11-30-17. Since then I have wrote numerous times about my (left shoulder) and how much pain I've been in. I finally seen the doctor on 7-17-18 and told him about the pain. He prescribed me medication which took a week for me to receive which was ibuprofen 600. These pain medications ibuprofen, tylenol and muscle rub doesn't work. I've been in consistent pain for almost 9 months. It's not getting any better. I need help."

19. JCI medical staff routinely attributes scheduling delays to the HSU being short-staffed. The DOC have to provide reasonable medical care. even if they are short staffed/have to work overtime/ have to add staff on weekends. The fact that HSU was short-staffed during Rivera's need of medical care is no excuse for failing to provide timely and appropriate medical care.

20. On July 31, 2018, Rivera filed an inmate complaint no. JCI-2018-16381 in which he complained about the length of time he waited to see a doctor. Further, he grieved that he was in constant pain and suffered nerve damage from the delay in initiating adequate treatment for carpal tunnel syndrome.

21. On August 8, 2018, Rivera was seen at Black River Memorial Hospital for left arm and shoulder pain, where an EMG was taken.

22. The EMG consultant, Dr. Lauren Schatzedar, opined that the EMG was "abnormal" and indicating: 1) mild bilateral median neuropathy at the writs, slightly worse on the left, consistent with carpal tunnel syndrome and 2) left ulnar neuropathy likely to the elbow. There is a decrease in conduction velocity without conduction block across the elbow.

23. Additionally, x-rays were taken revealing degenerative joint disease of the left shoulder.

24. On August 27, 2018, the institution complaint examiner (ICE) found that because the length of time the complainant waited for an appointment with the Advanced Care Provider for this medical issue, it is recommended to "affirm" the complaint- in the DOC's parlance, that means that Rivera should win his complaint.

25. Two days later, on August 29, 2018, the Appropriate Reviewing Authority by Beth Dittmann accepted the ICE's recommendation and "affirmed" Rivera's complaint.

26. Over the next twelve weeks, Rivera continued to submit health care requests but was not seen again until December 5, 2018.

27. On December 5, 2018, Rivera saw Dr. Martin who ordered physical therapy and a consultation with a neurologist.

28. On February 18, 2019, Dr. Jerry Davis saw Rivera and confirmed that Rivera had carpal tunnel syndrome and left ulnar nerve damage and recommended that Rivera have surgery.

29. Rivera's surgery was scheduled for February 21, 2019. On February 18, 2019, Dr. Davis advised Rivera to stop taken ibuprofen until 3 days after surgery and that Rivera's post-operation pain should be treated with short-term duration of Lortab. Lortab is a schedule 3 narcotic containing hydrocodone and acetaminophen.

30. On February 21, 2019, Rivera underwent surgery at Gunderson Lutheran Medical Center for carpal tunnel release and left ulnar nerve decompression. To perform the surgery, Dr. Davis had to create a vertical incision in the palm of Rivera's left hand. The incision was closed with sutures. Dr. created a treatment plan that included prescribing Lortab, indicating that he expected Rivera would be in sever pain.

31. After his surgery, Rivera made a number of oral and written requests for narcotic pain medication. He was told that defendants Tidquist and Martin did not prescribe narcotic pain medication.

32. The refusal to give Rivera the pain medication called Lortab was in direct contravention to Dr. Davis' post-op instructions. As a result, Rivera's pain was not properly treated

## FIRST CAUSE OF ACTION (DELAYED APPOINTMENT WITH DOCTOR

33. Rivera repeats and realleges the allegations contained in paragraphs 11 through 33 of this Complaint as though said paragraphs were set forth herein.

34. Between November 30, 2017 and February 21, 2019, Rivera suffered from carpal tunnel syndrome which caused nerve damage. Rivera's condition mandated a prompt medical appointment with a physician but defendant Pralle failed to effectuate a medical appointment on December 13, 2017.

35. Defendant Pralle knew or should have known that delaying a medical appointment with a doctor would cause unnecessary and severe pain for Rivera.

36. A timely doctor's appointment would have prevented unreasonable delay and unnecessary suffering through pain.

37. Defendant Pralle's failure to promptly schedule Rivera an immediate appointment with a doctor cause Rivers to suffer unnecessary pain and nerve damage in violation of the Eighth Amendment and Wisconsin state law for medical negligence.

## SECOND CAUSE OF ACTION (SHORT-STAFFING)

38. Rivera repeats and realleges the allegations contained in paragraphs 11 through 32 of this Complaint as though said paragraphs were set forth herein.

39. Between November 30, 2017 and July 17, 2018, Rivera received no medical treatment for carpal tunnel syndrome due to the HSU at JCI being chronically short-staffed. These

shortages unreasonably delayed Rivera access to a physician for diagnosis and treatment of carpal tunnel syndrome resulting in infliction of unnecessary pain and suffering and nerve damage.

40. Defendants Burnett, Carr, and Maassen maintained customs or practices that posed a substantial risks of serious harm to inmates. Specifically, defendants Burnett, Carr, and Maassen acquiesed in and permitted medical staff shortages and inferior medical care to continue.

41. Defendants Burnett, Carr, and Maassen acted with deliberate indifference and medical negligence by failing to provide adequate medical staffing with consequence that patient's medical care is delayed and they have to suffer unnecessary in the interim.

### THIRD CAUSE OF ACTION (REFUSAL OF POST-OP NARCOTIC PAIN MEDICATION)

42. Rivera repeats and realleges the allegation contained in paragraphs 11 through 32 of this Complaint as though said paragraphs were set forth herein.

43. On February 21, 2019, when Rivera returned to JCI after surgery, he inquired about narcotic pain medication to a staff nurse. The staff nurse advised Rivera that defendants Tidquist and Martin did not prescript a narcotic for post-op pain and he should continue taking asprin and resume taking ibuprofen despite his surgeon telling him not to take ibuprofen until three (3) days after surgery. This was in direct contravention of Dr. Davis' post-op instructions.

44. Rivera requested pain medication at least twenty times between February 21, 2019 and February 28, 2018. He was told

that he was being denied narcotic pain medication on the instructions of defendants Pralle, Tidquist, and Martin.

45. Defendants Pralle, Tidquist, and Martin were deliberately indifferent to Rivera's serious medical need for refusing for eight days to permit him the pain medication that had been recommended by his surgeon.

WHEREFORE, Plaintiff Jason Rivera respectfully demands judgment against Defendants as follows:

1. Entering judgment for Plaintiff and against each Defendant, jointly and severally;

2. Awarding compensatory damages against all Defendants;

3. Awarding punitive damages against all Defendants;

5. Awarding all such relief as the Court deems just and equitable.

Dated this 5th day of June, 2019

Respectfully submitted,

Jason Rivera #394302
Jackson Correctional Inst.
P.O. Box 233
Black River Falls, WI 54615