IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JASON RIVERA,

               Plaintiff,               OPINION AND ORDER

   v.
                                                    19-cv-506-wmc

KRISTINE PRALLE, KEVIN CARR,
DAVID BURNETT, TAMMY
MAASSEN, DEBRA TIDQUIST,
and SANDRA ENDER,

               Defendants.

---

*Pro se* plaintiff Jason Rivera filed this lawsuit while incarcerated by the Wisconsin Department of Corrections ("DOC") at Jackson Correctional Institution ("Jackson"), alleging that the defendants violated the Eighth Amendment and Wisconsin state law by failing to provide timely, adequate medical care for shoulder pain.  His primary claim was that he waited eight months between the time of his initial referral for evaluation and being seen by advanced care provider.  The court granted defendants' motion for summary judgment with the exception of plaintiff's claim against Health Services Unit ("HSU") Manager Tammy Maassen, reserving a ruling on:  (1) plaintiff's allegation that Maassen was deliberately indifferent to systemic deficiencies at Jackson that caused the lengthy delay in his receiving treatment from advanced care providers; and (2) plaintiff's motion for assistance with the recruitment of counsel.  (Dkt. #52.)

There are now several pending motions in this case.  When the court reserved its ruling on the claim against defendant Maassen, it ordered that the DOC Secretary:  (a) identify the Bureau of Health Services ("BHS") Medical Director between January 2017

and December 2018; and (b) provide the average time between an initial referral to an advanced care provider and actually being seen by such a provider for each calendar year between 2015 and 2019 at Jackson. (Dkt. #52, at 13.) The Secretary responded by providing the names of individuals who held the position of BHS Medical Director during the period relevant to plaintiff's claims. (Dkt. #55.) However, defendant Maassen and her attorneys, Wisconsin Attorney General Joshual L. Kaul and Assistant Attorney General Kathryn Pfefferle, move for reconsideration of the order requiring production of average, annual referral delays at Jackson for the relevant period, asserting that the requested records are "not readily available," would be unduly burdensome to compile, and are ultimately irrelevant to the claim against the remaining Maassen, who asserts qualified immunity. (Dkt. #57.) In addition, plaintiff has filed a motion for reconsideration of the court's decision to grant summary judgment on his claim that defendant Kristine Pralle was deliberately indifferent by failing to ensure that he received prompt medical attention. (Dkt. #53.) Finally, plaintiff has also filed a motion to reopen the time to take discovery regarding defendant Maassen's subjective knowledge of staff shortages at Jackson in hopes of supporting his claim that he was denied adequate care due to systemic deficiencies. (Dkt. #63.) The court will grant now defendant's motion for reconsideration and will deny plaintiff's motions for the reasons discussed below.

BRIEF BACKGROUND

The court has previously set forth the undisputed facts underlying plaintiff Rivera's claims and his relevant medical treatment. (Dkt. #52, at 2-9.) Plaintiff's central claim is that he endured a lengthy delay before being seen by an advanced care provider or

physician for his complaints of severe shoulder pain. On November 30, 2017, plaintiff was seen by a physical therapist, who recommended that he be seen by an advanced care provider within 24 hours. Although plaintiff was seen by nursing staff and other providers in the Jackson HSU, he did not see a physician until eight months after the physical therapist's original referral.

When plaintiff was finally seen on July 17, 2018, Dr. Martin described plaintiff's range of motion as "fairly good," but he ordered an EMG of plaintiff's arms and an x-ray of his left shoulder. Taken on July 25, that x-ray revealed degenerative joint disease. The EMG also showed mild, bilateral median neuropathy at plaintiff's wrists consistent with carpal tunnel syndrome, slightly worse on the left side; and left ulnar neuropathy likely localized to plaintiff's left elbow. Because plaintiff's symptoms were minimal, Dr. Martin planned to monitor his shoulder and arm over time. When plaintiff continued to experience pain, however, Dr. Martin ordered an MRI of his left shoulder. Because the results were normal, Dr. Martin referred plaintiff to physical therapy and for a neurosurgery consult to treat nerve pain. Eventually, in 2019, plaintiff had surgery in the form of carpal tunnel release and a left ulnar nerve decompression. This lawsuit ensued.

The court granted summary judgment in favor of then-DOC Secretary Carr and BHS Medical Director David Burnett, noting that neither of those supervisory officials were employed in that capacity when plaintiff's claims arose. (Dkt. #52, at 11.) The court also granted summary judgment on plaintiff's claims against three individual providers (Nurse Kristine Pralle, Nurse Sandra Ender, and APNP Debra Tidquist), finding that no reasonable jury could conclude those defendants violated his rights under the Eighth

Amendment by treating his pain with callous disregard or deliberate indifference. (*Id*. at 15-20.) Because the court also declined supplemental jurisdiction over plaintiff's state-law claims, that left only plaintiff's allegation that Jackson's HSU Manager Maassen allowed chronic understaffing rising to the level of systemic deficiency at Jackson and, therefore, was responsible for the lengthy delay he experienced between the physical therapist's recommended referral to and actually being seen by an advanced care provider. (*Id*. at 10-13.)

OPINION

**I. Plaintiff's Motion for Reconsideration**

To begin, plaintiff argues that the court erred by granting summary judgment on his claims against Nurse Pralle and seeks reconsideration under Federal Rule of Civil Procedure 54(b). (Dkt. #53.) Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities," unless a partial judgment is entered as to such an order. Fed. R. Civ. P. 54(b). "Motions to reconsider (or more formally, to revise) an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e): to correct manifest errors of law or fact or to present newly discovered evidence." *Woods v. Resnick*, 725 F. Supp. 2d 809, 827-28 (W.D. Wis. 2010) (citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)).

4

Here, plaintiff had alleged that Pralle failed to respond properly to a health services request ("HSR") and, as a result, denied him adequate medical care for shoulder pain. As noted in this court's summary judgment opinion, plaintiff submitted an HSR on December 13, 2017, stating that he had been seen about his shoulder on November 30, 2017, and asking when he would be "seen by a doctor" because his shoulder was not getting any better. (Dkt. #35-1, at 2.) Nurse Pralle reviewed that request and responded within one day, noting that plaintiff's scheduled "[a]ppointment with Dr. Martin is soon." (*Id.*) The court granted summary judgment on the claim against Nurse Pralle because a jury could not reasonably conclude that she recklessly disregarded plaintiff's medical needs based on how she triaged his HSR. (Dkt. #52, at 15.)

Plaintiff does not dispute that Nurse Pralle reviewed the HSR and responded promptly to his question within one day. According to prison policy, however, he argues that Pralle was required to see him in response to the HSR because there was a notation in his chart following the November 30 appointment for a follow-up appointment with not only an advanced care provider, but also a nurse. (Dkt. #53, at 3.) As an initial matter, plaintiff did not raise this argument in response to Pralle's summary-judgment motion. (Dkt. #40, at 3-4.) A motion for reconsideration is not a vehicle for a party to advance arguments that could and should have been presented to the court before the challenged judgment was entered. *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010) (citing *Bordelon v. Chicago School Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000)). More importantly, even if plaintiff had raised this argument previously, or could do so now because partial judgment was not formally entered for Pralle, he still fails to show that

5

Pralle was deliberately indifferent to his need for medical care because his HSR request did not ask for an appointment with a nurse. He only asked about when he would be seen by a doctor. (Dkt. #35-1, at 2.) Finally, having reason to believe that plaintiff would soon be seen by an advance care provider, no reasonable jury could find Nurse Pralle had acted with deliberate indifference to foregoing an interim exam by another nurse. Because plaintiff has not shown that that the court erred in granting summary judgment on his claim against defendant Pralle, his motion for reconsideration is denied.

**II. Defendant's Motion for Reconsideration**

The court reserved a ruling on plaintiff's claim that HSU Manager Maassen had acted with deliberate indifference to chronic understaffing at Jackson, which caused lengthy delays in medical appointments and treatment in violation of the Eighth Amendment, and asked then DOC Secretary Carr to provide additional information with respect to that claim. (Dkt. #52, at 13.) Defendant seeks reconsideration of the court's order to have Secretary Carr provide evidence of delays in care at Jackson over a four-year period between 2015 and 2019, because the requested records do not exist and would take an estimated 4,749.75 manhours to compile. (Dkt. #57, at 17-18; Rothenhoefer Decl. (Dkt. #59) ¶ 23). In particular, because DOC did not implement an electronic medical record system until 2018, defendant explains that staff would have to cull through and decipher paper medical charts for approximately 4,805 inmates who were assigned to Jackson between 2015 and 2019. (Rothenhoefer Decl. (Dkt. #59) ¶¶ 10-14.)

6

In addition, BHS Medical Director Dr. Daniel Lavoie, who has only held that position since 2021,[1] explains that considering the requested "average wait time" between initial referrals and visits with an advanced care provider is unlikely to be helpful, since patients are triaged and scheduled based on need (in other words, the risk to a particular patient's health). (Lavoie Decl. (dkt. #58) ¶ 9.) Because wait time would vary depending on whether the patient has an urgent condition, which would be seen first and within the shortest time frame, therefore, the data for overall wait times between referrals and visits for patients like plaintiff, who are suffering from chronic but stable conditions (such as joint pain), would be skewed and of limited value. (*Id.* at ¶¶ 9-10.) ("like lumping together apples to oranges")

Finally, defendant disputes that the requested information would even be relevant to the Eighth Amendment claim against HSU Manager Maassen because no defendant could have been aware of the average wait time between an initial referral and care by a physician in the absence of such data being compiled. (Dkt. #57, at 20.) A prison official may only be held liable under the Eighth Amendment's deliberate-indifference standard if the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) ("A prison

---

[1] In response to the court's previous order for additional information, defendant advises that from May 14, 2017, through February 6, 2018, the BHS Medical Director position was vacant. (Dkt. #55, at 1.) During this time, BHS Director Jim Greer served as a "back-up" manager in some capacity, while former BHS Medical Director Dr. Holzmacher was employed as a limited term employee ("LTE") without supervisory authority until Dr. Paul Bekz was hired as BHS Medical Director, serving in that position from February 5, 2018, through November 21, 2020. (*Id.* at 1-2.)

official acts with deliberate indifference only when he '*actually* [knows] of and disregard[s] a substantial risk of harm.") (emphasis and alterations in original). Defendant further argues that she has no authority over staffing levels and that she is entitled to qualified immunity from plaintiff's claim. (*Id*. at 10-15.)

First, the court did not intend to saddle the DOC Secretary with *creating* records that did not already exist in response to its request. In fact, the court acknowledged that the data may not be readily available. (Dkt. #52, at 13 n.6.) The fact that such information is not available, is sufficient to relieve the Secretary of the obligation to provide it, although it is obviously no cause for commendation.[2] 8B Charles Alan Wright, et al., *Federal Practice & Procedure* § 2210 (3d ed. 2010) ("A document or thing is not in the possession, custody, or control of a party if it does not exist. Production cannot be required of a document no longer in existence nor of one yet to be prepared."); *see also Sagami v. Palmer Marketing ENT, LLC*, No. 10-cv-152-slc, 2011 WL 13244112, at *3 (W.D. Wis. July 15, 2011) (a party is not required by the discovery rules to prepare a document not in existence). Accordingly, the court will grant the defendant's motion for reconsideration as to its order for production of average wait times.

Second, the court reluctantly agrees that defendant Maassen is, therefore, entitled to summary judgment on the record before it. The court previously rejected plaintiff's claim that Maassen could be held personally responsible for the number of advanced care providers available to service the inmate population at Jackson during 2017 and 2018,

---

[2] To the contrary, the court would think the failure of the DOC generally and HSU Managers specifically should be cause for concern as to whether essential health care is being negligently or grossly negligently delayed.

8

when plaintiff alleges he experienced a delay in receiving care from a physician. (Dkt. #52, at 11.) Further, Maassen has now renewed her request for qualified immunity from plaintiff's Eighth Amendment claim that she was somehow responsible for systemic deficiencies in care at Jackson for allowing chronic understaffing. (Dkt. #57, at 11.) Under the doctrine of qualified immunity, a plaintiff may not obtain damages from a defendant for a constitutional violation unless the plaintiff shows not only that the defendant violated his rights, but also that his rights were clearly established at the relevant time. *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019).

Plaintiff has not met his burden to overcome Maassen's entitlement to qualified immunity because he neither points to a closely analogous, binding case that was decided in his favor, nor to a more general constitutional rule that applies "with obvious clarity" to defendants' conduct. *Cibulka v. City of Madison*, 992 F.3d 633, 639-40 (7th Cir. 2021). Instead, the Seventh Circuit has held that prison health care unit administrators such as Maassen, who lack authority to hire providers, "cannot be responsible for the lack of doctors" and are not liable under a theory that chronic understaffing or systematic deficiencies prevented prompt care. *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 489 (7th Cir. 2022) (affirming the district court's grant of summary judgment to a health care administrator on claims of systemic deficiencies); *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) ("[D]efendants cannot be [held liable under the Eighth Amendment] if the remedial step was not within their power.").

Plaintiff argues that Maassen is not entitled to qualified immunity because she was aware that there were delays in providing care, but did nothing about it. (Dkt. #62, at 4-

9

5.) As noted previously, Maassen acknowledged that there was a temporary increase in delayed appointments for non-urgent and non-emergent conditions at Jackson in 2017 and 2018, attributing those delays to the fact that Dr. Martin was not assigned to Jackson on a full-time basis during that time period. (Maassen Decl. (dkt. #35) ¶ 33.) Although plaintiff also argues that Maassen should have referred him to an outside surgeon if no physicians were available at Jackson (dkt. #62, at 6), Maassen explains that advance care providers are responsible for all treatment decisions, orders and care plans for patients confined in DOC, *including* approving the treatment recommendations for off-site providers. (Maassen Decl. (dkt. #35) ¶ 10.) Because Maassen lacked authority to hire more physicians or refer plaintiff to an outside provider without a recommendation from one, no reasonable trier of fact could conclude that she was deliberately indifferent to plaintiff's medical needs due to chronic understaffing at the Jackson facility in 2017 and 2018. *Reck*, 27 F.4th at 489. Therefore, absent evidence that Maassen was personally aware that plaintiff was in severe pain and in need of prompt treatment, Maassen is entitled to qualified immunity and the court will grant summary judgment on this basis.

The court notes that plaintiff has requested additional discovery on the issue of Maassen's knowledge of delays during the time when his care was delayed. (Dkt. #63, at 2.) Specifically, plaintiff seeks discovery of all "Affirmed" inmate complaints at Jackson between 2017 and 2022, arguing that Maassen would have seen these complaints and deduced that staffing levels were inadequate or that there were systemic deficiencies. (*Id.*) Unfortunately, this request, too, is overbroad. Moreover, plaintiff has not shown that a continuance to conduct additional discovery is warranted under Federal Rule of Civil

Procedure 56(f).  With the exception of one requested interrogatory, defendant's counsel has supplemented the record with a statement showing that plaintiff did not make any discovery requests in this case.  (Pfefferle Decl. (dkt. #60) ¶ 6.)  By waiting to seek discovery of this information until after the court issued its opinion on defendants' summary judgment motion, plaintiff has not shown that he pursued discovery with requisite diligence.

More importantly, as noted above, Maassen has admitted that she was aware of a temporary increase in delays in obtaining care for non-emergent conditions during the time period that plaintiff was waiting to be seen by a physician, but she was without authority to hire additional staff or make referrals to outside providers without an advanced care provider's approval and the record makes clear she had no role in triaging HSRs.  Plaintiff has offered no evidence that Maassen was personally aware of his specific, severe pain that might have amounted to deliberate indifference by doing nothing to try to address it.  (Maassen Decl. (dkt. #35) ¶¶ 10, 33.)  Regardless, plaintiff has not adequately demonstrated how the requested discovery is likely to raise a genuine issue of material fact.  Accordingly, his motion to reopen discovery must be denied.  *See Grundstat v. Ritt*, 166 F.3d 867, 873 (7th Cir. 1999) ("A party who has been dilatory in discovery may not use Rule 56(f) to gain a continuance where he has made only vague assertions that further discovery would develop genuine issues of material fact.") (citation omitted).  The court will also deny plaintiff's related motion for assistance in recruiting counsel (dkt. #49) and will dismiss this case.

ORDER

IT IS ORDERED that:

1) Defendant's motion for reconsideration (Dkt. #57) is GRANTED. The court's previous order directing DOC Secretary Carr to produce records related to delays in care at Jackson Correctional Institution between 2015 and 2019 (Dkt. #52, at 13) is VACATED.

2) Defendants' motion for summary judgment (dkt. #32) as to the plaintiff's remaining claims against defendant Tammy Maassen is GRANTED.

3) Plaintiff's motion for reconsideration of the claims against Nurse Kristine Pralle (Dkt. #53) is DENIED.

4) Plaintiff's motions for assistance with the recruitment of counsel (dkt. #49) and to reopen discovery (dkt. #63) are also DENIED.

5) The clerk of court is directed to enter judgment and to close this case.

Entered this 10th day of September, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge